## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BUC-EE'S, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **SUPER FUELS LOMBARDY, LLC,** | § | |
| **SUPER FUELS NORTHGATE, LLC, and** | § | **JURY DEMANDED** |
| **SUPER FUELS ST AUGUSTINE, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT
---

Plaintiff Buc-ee's, Ltd. ("Plaintiff"), by and through its undersigned counsel, files this Original Complaint against Defendants Super Fuels Lombardy, LLC, Super Fuels Northgate, LLC, and Super Fuels St Augustine, LLC (collectively, "Defendants" or "Super Fuels"), and hereby alleges as follows:

### PARTIES

1.      Plaintiff is a Texas limited partnership with its principal place of business located at 327 FM 2004, Lake Jackson, Texas, 77566.

2.      Upon information and belief, defendant Super Fuels Lombardy, LLC is a Texas limited liability company with its principal place of business located at 3400 Lombardy Lane, #108, Dallas, Texas, 75220.  Super Fuels Lombardy, LLC may be served with process by serving its registered agent Shazeb Daredia at 3400 Lombardy Lane, #108, Dallas, Texas, 75220, or wherever he may be found.

3.    Upon information and belief, defendant Super Fuels Northgate, LLC is a Texas limited liability company with its principal place of business located at 4455 W. Northgate Drive, Irving, Texas, 75038.  Super Fuels Northgate, LLC may be served with process by serving its registered agent Shazeb Daredia at 4455 W. Northgate Drive, Irving, Texas, 75038, or wherever he may be found.

4.    Upon information and belief, defendant Super Fuels St Augustine, LLC is a Texas limited liability company with its principal place of business located at 1612 S. St. Augustine Drive, Dallas, Texas, 75217.  Super Fuels St Augustine, LLC may be served with process by serving its registered agent Shazeb Daredia at 1612 S. St. Augustine Drive, Dallas, Texas, 75217, or wherever he may be found.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; pursuant to 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks; pursuant to 28 U.S.C. § 1338(b), as it involves unfair competition related to a claim under trademark laws; pursuant to 28 U.S.C. § 1331, as it involves a federal question; and pursuant to the principles of supplemental jurisdiction under to 28 U.S.C. § 1367.

6.    This Court has general personal jurisdiction over Defendants due to their residency and business activities in this judicial district.  This Court has specific personal jurisdiction over Defendants due to the nature and quality of their actions toward the state in which this Court is located.  The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

7.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), as all Defendants reside in this judicial district, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and Defendants are using infringing trademarks in this judicial district.

## FACTUAL ALLEGATIONS

8.    Plaintiff owns and operates a nationally renowned chain of convenience stores and travel centers under the mark "BUC-EE'S."  For more than forty years, Plaintiff has proudly provided quality convenience store and gas station services under the Buc-ee's brand, which has become widely known throughout the United States in connection with Plaintiff's offerings.

9.    Buc-ee's was founded in 1982 by Arch "Beaver" Aplin III, who opened the first Buc-ee's convenience store in the Lake Jackson, Texas, area with the goal of providing a clean and friendly environment for consumers.

10.    What began as a single convenience store has rapidly grown into a national phenomenon, and has become "a must-stop, one-stop-shop" for consumers across the country.[1] For many, Buc-ee's "has become the rare brand—like Apple and Costco—that inspires loyalty that goes well beyond rational consumer calculations."[2]

11.    The Buc-ee's brand has significantly expanded its geographic footprint over the years. There are currently fifty-one Buc-ee's establishments spanning across nine states (namely,

---

[1] Scottie Andrews, *Inside the Cult of Buc-ee's: How a Texas Gas Station Became the People's Pump,* CNNTravel (Oct. 1, 2023, 5:00 AM), https://www.cnn.com/2023/10/01/travel/bucees-gas-station-convenience-popularity-cec/index.html (copy attached hereto as **Exhibit A**).

[2] Eric Benson, *Buc-ee's: The Path to World Domination*, Texas Monthly (Mar. 2019), https://www.texasmonthly.com/news-politics/buc-ees-the-path-to-world-domination/ (copy attached hereto **Exhibit B**).

Missouri, Alabama, Florida, Georgia, South Carolina, Tennessee, Kentucky, Colorado and, of course, Texas).

12.     Plaintiff's travel centers are famous for providing consumers with a unique roadside experience that features several widely acclaimed amenities, including Plaintiff's signature spacious restrooms – which are routinely ranked among America's cleanest – and its massive facilities and parking lots, which generally span over fifty thousand square feet and boast dozens of fueling positions.  Plaintiff's large-scale convenience stores also offer a variety of flavorful Buc-ee's house-brand food items and an array of Buc-ee's-branded merchandise and souvenirs.

### A.    *Plaintiff's Buc-ee's Marks*

13.     Plaintiff has continuously used the mark "BUC-EE'S," both alone and in combination with certain other words and/or designs, in connection with providing convenience store services, gas station services, and other related goods and services for four decades.

14.     In addition, Plaintiff has continuously used the below-referenced beaver logo, both alone and in combination with certain other words and/or designs (including in combination with the word "Buc-ee's"), in connection with its goods and services since the 1980s.

 

15.     Plaintiff is the owner of common law trademark rights in and to the Buc-ee's beaver logo in connection with its extensive array of goods and services, including, but not limited to, convenience store services and gas station services.

16.    Plaintiff also owns several federal trademark registrations for the Buc-ee's logo (both in grayscale and in color), including U.S. Registration Nos. 4,007,064; 4,316,461; 4,973,077; 4,973,185; 6,421,517; 6,421,518; 7,419,559; and 3,246,893.    Plaintiff's federal trademark registrations are valid and subsisting, and several are incontestable pursuant to 15 U.S.C. § 1065.

17.    The foregoing federal trademark registrations encompass a broad range of goods and services offered by Plaintiff, including, but not limited to, the services identified below:

| Mark | Registration No. & Date | Date of First Use in Commerce | Description of Services |
|---|---|---|---|
|  | U.S. Registration No. 3,246,893<br><br>Registration Date: May 29, 2007 | At least as early as July 1, 1982 | Int'l Class 35: Retail store services featuring convenience store items and gasoline |
|  | U.S. Registration No. 7,419,559<br><br>Registration Date: June 18, 2024 | At least as early as 1982 | Int'l Class 35: Retail store services featuring convenience store items and gasoline |
|  | U.S. Registration No. 4,973,185<br><br>Registration Date: June 7, 2016 | At least as early as August 1, 2006 | Int'l Class 4: Motor Fuel |

18.    Plaintiff continues to preserve and maintain its rights with respect to the Buc-ee's Marks, including those registered with the United States Patent and Trademark Office (the "USPTO"), in connection with the broad range of goods and services offered thereunder.

19.    Plaintiff also has Texas trademark registrations for the Buc-ee's logo with Registration Nos. 800478206, 800651507, 800651502, and 800651500.  These marks have been in continuous use within the State of Texas since their registration in 2005 and 2006.  Plaintiff's

logo marks, including as registered federally and in Texas, are hereinafter collectively referred to as the "Buc-ee's Marks."

20.     True and correct copies of the Registration Certificates for the federal and Texas trademark registrations identified herein are attached hereto *in globo* as **Exhibit C**.

21.     As a result of Plaintiff's 40+ years of extensive, continuous, and substantially exclusive use of the Buc-ee's Marks in Texas, the Buc-ee's Marks are famous within the State of Texas pursuant to Tex. Bus. & Com. Code § 16.103.

22.     Due to Plaintiff's longstanding and exclusive use of the Buc-ee's Marks, the growth and success achieved under the Buc-ee's Marks, and the substantial time, money, and effort Plaintiff has expended in promoting its goods and services under the Buc-ee's Marks, the Buc-ee's Marks have become, through favorable public acceptance and recognition, exclusive assets of significant value to Plaintiff as symbols of its goodwill and the quality of its products and services.

23.     The Buc-ee's Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's goods and services to the consuming public.  As noted above, the Buc-ee's brand is used across fifty-one (51) travel centers throughout the United States, ***all of which*** prominently display and utilize the Buc-ee's Marks to provide, advertise, and promote Plaintiff's offerings.

24.     As illustrated below, the Buc-ee's Marks appear on signs visible from the highway, above entrances to Plaintiff's stores, atop Plaintiff's fueling canopies, on signage inside of Plaintiff's stores, and on an array of Buc-ee's-branded merchandise and products sold at Plaintiff's stores.

  

 

25.     Due in large part to the substantial growth and success of Plaintiff's travel centers and brand, the Buc-ee's Marks have become a cherished icon by legions of patrons across the nation.  Indeed, as a segment that aired on CBS News's nationally-syndicated Sunday Morning program on January 30, 2022, observed, "[p]erhaps not since Mickey Mouse has a cartoon rodent captured the hearts . . . of so many[.]"[3]

26.     As a result of Plaintiff's prominent and extensive use and promotion of the Buc-ee's Marks, the trade and purchasing public have come to know and recognize the Buc-ee's Marks as a source-identifier for Plaintiff's offerings and the quality and consistency that consumers have come to expect from Plaintiff.  Accordingly, Plaintiff's Buc-ee's Marks have developed and represent valuable goodwill which rightfully belongs exclusively to Plaintiff.

---

[3] Chad Cardin, *Welcome to Buc-ee's*, CBS News Sunday Morning (Jan. 30, 2022, 9:21 AM), https://www.cbsnews.com/news/welcome-to-buc-ees/ (copy attached hereto as **Exhibit D**).

**B.      *Defendants' Unlawful Infringement of the Buc-ee's Marks***

27.     Defendants own and operate a chain of stores under the name "Super Fuels," which offer retail services featuring convenience store items and gasoline.

28.     Upon information and belief, Defendants currently operate three Super Fuels stores in Dallas County, Texas, two of which are located in Dallas, and one of which is located in Irving.

29.     Defendants are using the below-referenced marks (collectively, the "Infringing Marks") in connection with the foregoing services, which are identical to the services offered by Plaintiff under the Buc-ee's Marks.

30.    As shown below, the Super Fuels store located at 4455 W. Northgate Drive features the Infringing Marks prominently in connection with gasoline pumps, food offerings and beverages.







31.    As shown below, the Super Fuels store located at 1612 S. St. Augustine Drive features the Infringing Marks prominently in connection with gasoline pumps, food offerings and beverages.







32.     As shown below, the Super Fuels store located at 3400 Lombardy Lane features the Infringing Marks prominently in connection with gasoline pumps, food offerings and beverages.







33.     Defendants' use of the Infringing Marks is likely to cause confusion among consumers in the relevant market as to the source and origin of Defendants' services.  As illustrated above, Defendants' Infringing Marks prominently feature an anthropomorphic and cartoon

representation of a smiling animal that closely resembles a beaver, which is similarly positioned in a right-facing angle and is depicted in front of a circular background.

34.    According to public records maintained by the USPTO, on November 28, 2022, Defendants and/or their officers or affiliates filed a trademark application (Serial No. 97/694,769) for the composite mark depicted below, which was registered on January 2, 2024, in connection with "[r]etail store services featuring convenience store items and gasoline," in International Class 35 (U.S. Registration No. 7,259,819).



35.    Upon information and belief, Defendants did not begin using the Infringing Marks until as recently as 2022.

36.    There is no evidence indicating that Defendants used the Infringing Marks prior to the dates on which Plaintiff began using the Buc-ee's Marks in connection with its goods and services.   To the contrary, the trademark application associated with U.S. Registration No. 7,259,819 expressly provides that the above-referenced mark was not used in commerce until at least November 21, 2022, at the earliest.

37.    Accordingly, Plaintiff has, and continues to have, exclusive priority and rights over Defendants in and to the Buc-ee's Marks, and variants thereof, in connection with the relevant services.

38.     As noted above, Defendants' use of the Infringing Marks is likely to cause (to the extent it has not already caused) confusion, mistake, and/or deception among consumers in the relevant market as to the source, affiliation, and/or origin of Defendants' goods and services.

39.     The Infringing Marks mimic the salient portions of Plaintiff's famous Buc-ee's Marks, including with respect to, at least, the following elements:

a)     the inclusion of a smiling, cartoon-style animal that closely resembles a beaver;

b)     the positioning of the cartoon-style animal against a circular background;

c)     the orientation of the cartoon-style animal, which is similarly faced towards the right;

d)     the coloration of the cartoon-style animal, which is similarly depicted with a brown coat and lighter snout;

e)     the expression and facial features depicted on the cartoon-style animal, including with respect to its smile, upward snout, oval-shaped eyes, short ears and button nose;

f)     the use of brown as a primary color that matches the brown coloring used in the Buc-ee's Marks; and

g)     the use of red as a secondary color that matches the red coloring used in the Buc-ee's Marks.

40.     Further, the services offered under Defendants' Infringing Marks are identical to those offered under Plaintiff's Buc-ee's Marks, which significantly increases the likelihood of consumer confusion caused by Defendants' use of the Infringing Marks.

41.     The likelihood of confusion caused by Defendants' unauthorized use of the Infringing Marks is further amplified by the fact that Defendants are using the Infringing Marks in the same geographic areas in which Plaintiff operates, including in and around Texas.

42.     The likelihood of consumer confusion created by Defendants' use of the Infringing Marks is further exacerbated by the circumstances in which the Infringing Marks are encountered

by consumers. As set forth herein, Defendants are using the Infringing Marks in connection with providing gas station and convenience store services. Accordingly, the vast majority of consumers encountering the Infringing Marks will consist of drivers who are actively operating motor vehicles and are thus incapable of providing anything beyond a brief glance at the Infringing Marks, which are displayed on the front facade of Defendants' stores and on Defendants' gas station canopies.

43.     Nor would passengers riding in vehicles fare much better, given how little time it generally takes for a vehicle to pass a stationary object, which, depending on the speed at which the vehicle is traveling, can be as little as a fraction of a second.

44.     As if these circumstances were not onerous enough, consumers viewing the Infringing Marks from their vehicles will generally be required to do so from a distance, which further limits their ability to meaningfully assess the Marks before reaching an initial conclusion as to their source or affiliation. In particular, the positioning of the Infringing Marks on the gas station canopy over the gasoline pumps even further promotes this confusion.

45.     Rather, any meaningful assessment of the Infringing Marks can generally occur *only after* the consumer has turned into Defendants' facilities and is able to view the Infringing Marks more closely and from a stationary position – at which point it would be highly unlikely for consumers to change their purchasing decisions or seek out a different source for the relevant services. Thus, even if, upon closer inspection, a consumer was able to conclude that the Infringing Marks are not actually associated with Plaintiff, the injury and loss of business caused by Defendants' use of the Infringing Marks will have already been sustained.

46.     Upon information and belief, Defendants committed these infringing acts with prior knowledge of Plaintiff's Buc-ee's Marks, particularly given the substantial fame and popularity the Buc-ee's Marks have generated in the State of Texas.

47.     Plaintiff has no control over the nature, quality, or pricing of Defendants' services, promotional activities, or any other aspect of Defendants' business operations.  Defendants' unlawful infringement of Plaintiff's widely recognized Buc-ee's Marks falsely denotes its association with Defendants' services, and places Plaintiff's hard-earned reputation behind a business and services over which it has no affiliation or control.

48.     Upon information and belief, Defendants have adopted and are using the confusingly similar Infringing Marks in a deliberate attempt to exploit and capitalize on the goodwill and success Plaintiff has achieved under the Buc-ee's Marks and brand.

49.     As outlined above, Defendants' use of the Infringing Marks, and/or similar variants thereof, is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that Defendants' goods and services are authorized by, associated with, sponsored by, and/or endorsed by Plaintiff when, in fact, they are not.

50.     The likelihood of confusion, mistake, and deception brought about by Defendants' misappropriation of Plaintiff's Buc-ee's Marks causes irreparable harm to the goodwill symbolized by the Buc-ee's Marks and brand and the hard-earned reputation for quality the Buc-ee's Marks embody, for which there is no adequate legal remedy.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

51.     Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

52.     Plaintiff markets, advertises, and provides convenience store and gas station services and other related goods and services under the Buc-ee's Marks and uses the Buc-ee's Marks to distinguish its goods and services from those of others in the relevant marketplace.

53.     As a result of Plaintiff's longstanding, continuous, and prominent use of the Buc-ee's Marks in connection with its goods and services, the purchasing public has come to recognize the Buc-ee's Marks as designations identifying Plaintiff as the source of its offerings. Accordingly, Plaintiff's Buc-ee's Marks have developed and represent the valuable goodwill and reputation of Plaintiff, which rightfully belongs exclusively to Plaintiff.

54.     As described herein, Plaintiff is the owner of several federal trademark registrations for the Buc-ee's Marks, including U.S. Registration Nos. 3,246,893 and 7,419,559, which are registered in connection with "[r]etail store services featuring convenience store items and gasoline," in International Class 35, and U.S. Registration No. 4,973,185, which is registered in connection with "[m]otor fuel," in International Class 4.

55.     Defendants have infringed Plaintiff's federally registered Buc-ee's Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing retail store services featuring convenience store items and gasoline and other related goods and services under the Infringing Marks, which are confusingly similar to Plaintiff's federally registered Buc-ee's Marks.

56.     Defendants' use of the Infringing Marks in conjunction with providing retail store services featuring convenience store items and gasoline and other related goods and services is without Plaintiff's permission or authority and is likely to cause confusion, mistake, and/or deception among the purchasing public and also constitutes initial interest confusion.

57.     Defendants' use of the Infringing Marks has been made notwithstanding Plaintiff's well-known and prior established rights in the Buc-ee's Marks and with actual notice and constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072.

58.     Defendants' conduct constitutes infringement of Plaintiff's federally registered Buc-ee's Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Plaintiff has been damaged as a result of Defendants' infringement of the Buc-ee's Marks.  Plaintiff alleges, on information and belief, that Defendants' sale and provision of goods and services under the confusingly similar Infringing Marks have resulted in loss of sales to Plaintiff, have reduced the business and profits of Plaintiff, and have injured the general reputation of Plaintiff, all to Plaintiff's damage in an amount not yet ascertainable, but that will be determined during this action.

60.     Plaintiff alleges, on information and belief, that Defendants have derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but that will be determined during this action.

61.     Plaintiff alleges, on information and belief, that Defendants acted intentionally and/or willfully in infringing upon the Buc-ee's Marks, with knowledge of Plaintiff's exclusive rights in and to the Buc-ee's Marks, and with knowledge that Defendants' use of the confusingly similar Infringing Marks in connection with the relevant services was unauthorized and was, in fact, infringing.

62.     As a result of Defendants' wrongful conduct, Plaintiff is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney's fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, Plaintiff is entitled to statutory damages under 15 U.S.C. § 1117(c).

63.     Defendants' infringing activities complained of herein have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation, and goodwill in the federally registered Buc-ee's Marks, for which Plaintiff has no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

64.     Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

65.     Defendants have infringed Plaintiff's Buc-ee's Marks in interstate commerce by various acts, including, without limitation, by marketing, advertising, offering for sale, and/or providing retail store services featuring convenience store items and gasoline and other related goods and services under the Infringing Marks, which are confusingly similar to Plaintiff's Buc-ee's Marks.

66.     Defendants' improper and unauthorized use of, and sale of goods and/or services under, marks confusingly similar to Plaintiff's Buc-ee's Marks, including, but not limited to the Infringing Marks, is likely to cause confusion, mistake, and/or deception among consumers in the relevant marketplace and constitutes infringement of Plaintiff's trademark rights in violation of the Lanham Act, including Section 43 of the Act, which prohibits the use of a trademark in such a

manner as is likely to cause confusion as to the source of the goods and/or services bearing the trademark. *See* 15 U.S.C. § 1125.

67.     Defendants intend to sell, and are selling, their services under the Infringing Marks and will continue to do so unless enjoined by this Court.  Plaintiff has no adequate remedy at law for Defendants' infringement of Plaintiff's Buc-ee's Marks, in that: (i) the Buc-ee's Marks are unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the injuries to Plaintiff resulting from Defendants' infringement are not precisely and fully ascertainable; (iii) Defendants' infringement injures and threatens to continue to injure Plaintiff's reputation and goodwill; and (iv) the injury resulting to Plaintiff from Defendants' unlawful acts complained of herein are continuing, and they will cause irreparable injury to Plaintiff and to the public.  Further, the balance of hardships weighs in Plaintiff's favor as Defendants are the infringing parties, Defendants deliberately selected the Infringing Marks and are choosing to engage in the infringing activities complained of herein, and Defendants' costs would be minimal, as they can continue operating their business(es) under the name "Super Fuels," and/or any other alternative name, mark, or logo that does not infringe upon those owned by Plaintiff.  Further, the public interest is served by enjoining the improper use of trademarks and making such use unprofitable.  Accordingly, Plaintiff is entitled to an order from this Court permanently enjoining Defendants and their principals, agents, employees and others acting in concert with them, from directly or indirectly infringing Plaintiff's Buc-ee's Marks in any manner, including by using the Buc-ee's Marks or any other name, mark, design or logo that is confusingly similar to the Buc-ee's Marks in connection with the sale, offer for sale, advertising, or promotion of any goods or services in the Texas area.

68.    Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendants' infringing acts.  Moreover, as a result of Defendants' egregious infringement, Plaintiff seeks treble, additional, and enhanced damages from Defendants.

## COUNT III
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

69.    Plaintiff specifically realleges and incorporates by reference each and every preceding allegation contained in the Complaint as though fully set forth herein.

70.    Plaintiff's Buc-ee's Marks have been famous for a significant amount of time in relation to its provision of convenience store services, gas station services, and other related goods and services.

71.    Defendants' confusingly similar Infringing Marks have been used in commerce in association with providing retail store services featuring convenience store items and gasoline and other related goods and services for Defendants' commercial gain.

72.    Defendants have engaged in dilution by blurring because Defendants' use of the Infringing Marks is likely to cause an association arising from the similarity between Defendants' Infringing Marks and Plaintiff's Buc-ee's Marks that impairs the actual or acquired distinctiveness of Plaintiff's Buc-ee's Marks.

73.    Defendants have engaged in dilution by tarnishment because Defendants' use of the Infringing Marks is likely to cause an association arising from the similarity between Defendants' Infringing Marks and Plaintiff's Buc-ee's Marks that harms the reputation and goodwill associated with Plaintiff's Buc-ee's Marks.

74.     Defendants' acts are likely to continue to cause an association arising from the similarity between Defendants' Infringing Marks and Plaintiff's Buc-ee's Marks that lessens the capacity of Plaintiff's Buc-ee's Marks to identify and distinguish its goods and services from those of others.

75.     Upon information and belief, Defendants willfully intended to trade off the recognition and goodwill associated with Plaintiff and its famous Buc-ee's Marks in connection with providing retail store services featuring convenience store items and gasoline and other related goods and services.

76.     Defendants' acts are in violation of 15 U.S.C. § 1125(c).

<u>COUNT IV</u>
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**UNDER TEXAS COMMON LAW**

77.     Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

78.     Defendants' improper acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of Texas.  As a result of Defendants' infringement and unfair competition, Plaintiff has suffered and will continue to suffer injury and damage in an amount yet to be determined.

79.     Unless Defendants' unlawful acts are enjoined by this Court, they will continue to cause irreparable injury to Plaintiff and to the public, for which there is no adequate remedy at law.  Accordingly, Plaintiff is entitled to an order from this Court permanently enjoining Defendants and their principals, agents, employees and others acting in concert with them, from directly or indirectly infringing Plaintiff's Buc-ee's Marks in any manner, including by using the Buc-ee's Marks or any other name, mark, design or logo that is confusingly similar to the Buc-

ee's Marks in connection with the sale, offer for sale, advertising, or promotion of any goods or services in the Texas area.

80.    Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendants' infringing acts.  Moreover, as a result of Defendants' egregious infringement, Plaintiff seeks treble, additional, and enhanced damages from Defendants.

## <u>COUNT V</u>
## UNJUST ENRICHMENT UNDER TEXAS COMMON LAW

81.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

82.    As a result of Defendants' infringing and unauthorized use of the Infringing Marks, Defendants have obtained a benefit to which they are not entitled.

83.    Upon information and belief, Defendants' unlawful acts of infringement and unfair competition have resulted in profits and unjust enrichment to Defendants in an amount yet to be determined.

84.    Defendants are thus liable to Plaintiff for unjust enrichment under Texas common law.

## <u>COUNT VI</u>
## TRADEMARK DILUTION UNDER TEXAS LAW
### (Tex. Bus. & Com. Code § 16.103)

85.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

86.    Plaintiff's Buc-ee's Marks are widely recognized by the public in and throughout the State of Texas as designations of source of the goods and services offered by Plaintiff.

87.    As a result of Plaintiff's longstanding, continuous, and extensive use of the Buc-ee's Marks in the State of Texas, the Buc-ee's Marks are famous in Texas pursuant to Tex. Bus. & Com. Code § 16.103.

88.    Defendants' unlawful acts as described above demonstrate that Defendants are diluting the exclusivity and distinctiveness of Plaintiff's famous Buc-ee's Marks in violation of the Texas anti-dilution statute, Tex. Bus. & Com. Code § 16.103.

89.    As a result of Defendants' dilution of Plaintiff's distinctive Buc-ee's Marks, Plaintiff has suffered, and is suffering, injury and damage to which there is no adequate remedy at law.  Plaintiff therefore seeks permanent injunctive relief to prevent this type of injury from continuing.  Additionally, or in the alternative, Plaintiff seeks an accounting and damages.

<u>COUNT VII</u>
**CANCELATION OF REGISTRATION**
**(15 U.S.C. § 1119 and 28 U.S.C. § 2201)**

90.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

91.    This Court is authorized under 15 U.S.C. § 1119 and 28 U.S.C. § 2201 to determine the rights of Defendants with respect to the registration of the Infringing Mark depicted in U.S. Registration No. 7,259,819.

92.    As described herein, the Infringing Mark depicted in U.S. Registration No. 7,259,819 is confusingly similar to Plaintiff's Buc-ee's Marks and is used in connection with identical services as those offered under the Buc-ee's Marks (namely, "[r]etail store services featuring convenience store items and gasoline," in International Class 35).

93.    Defendants' use of the Infringing Mark depicted in U.S. Registration No. 7,259,819 is likely to cause confusion, mistake, and/or deception among consumers as to the source,

affiliation, and/or origin of Defendants' services.  As such, registration of the Infringing Mark depicted in U.S. Registration No. 7,259,819 is barred under 15 U.S.C. § 1052(d).

94.     Accordingly, Plaintiff respectfully requests that this Court issue an order certified to the Director of the USPTO for cancelation of U.S. Registration No. 7,259,819 pursuant to 15 U.S.C. § 1119.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff hereby respectfully requests the following relief against Defendants, as follows:

(a)     Entry of judgment in favor of Plaintiff and against Defendants on all claims asserted herein;

(b)     Entry of judgment determining that Defendants have infringed Plaintiff's federal and common law trademark rights in the Buc-ee's Marks;

(c)     Entry of judgment determining that Defendants have diluted the goodwill associated with Plaintiff's Buc-ee's Marks;

(d)     Entry of judgment determining that Defendants have engaged in unfair competition in violation of both federal and Texas common law;

(e)     An award of Defendants' profits and Plaintiff's damages for trademark infringement under 15 U.S.C. §§ 1114 and 1117, trebled, in an amount to be proven at trial;

(f)     An award of Defendants' profits and Plaintiff's damages for unfair competition under 15 U.S.C. §1125(a), trebled, in an amount to be proven at trial;

(g)     A permanent injunction by this Court prohibiting Defendants, and their respective agents, employees, and representatives and all persons in active concert and participation with them from: (1) engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent

business acts or practices described herein; (2) using without permission any mark or other intellectual property right of Plaintiff; (3) acting to infringe the Buc-ee's Marks; (4) acting in any other manner to derogate Plaintiff's intellectual property rights; and (5) requiring Defendants to file with this Court and to serve upon Plaintiff, within thirty days after the service on Defendants of the injunction, or such extended period as this Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(h)    An Order requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay Plaintiff their ill-gotten gains obtained from the infringing or otherwise unlawful activities complained of herein and/or to pay restitution;

(i)    An Order that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff;

(j)    Pursuant to 15 U.S.C. §1118, an Order requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to deliver up to Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, marketing materials, and other material in their possession, custody, or control bearing the Infringing Marks or any other mark that is confusingly similar to Plaintiff's Buc-ee's Marks;

(k)    Entry of judgment determining that Defendants are not entitled to registration of the Infringing Mark depicted in U.S. Registration No. 7,259,819 and certification of an Order pursuant to 15 U.S.C. § 1119 for cancelation of U.S. Registration No. 7,259,819 to the Director of the USPTO, who shall make appropriate entry upon the records of the USPTO and shall be controlled thereby;

(l)    That this Court award Plaintiff all damages caused by the acts of Defendants and all profits of Defendants from the acts complained of herein and/or all costs to Plaintiff caused by Defendants' activities complained of herein;

(m)    Trebling of damages and profits awarded to Plaintiff as authorized by law;

(n)    That this Court award Plaintiff pre-judgment and post-judgment interest;

(o)    That this Court award Plaintiff its reasonable attorney's fees and costs; and

(p)    That this Court award Plaintiff such other and further relief, at law or in equity, as the Court may deem just and equitable.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Date:  January 10, 2025

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Terrell R. Miller*
**Terrell R. Miller**
Texas Bar No. 24045446
tmiller@foley.com@foley.com
**Michelle Y. Ku**
Texas Bar No. 24071452
mku@foley.com
**Aaron E. Chibli**
Texas Bar No. 24091222
achibli@foley.com

2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:    214.999.3000
Fax:    214.999.4667

**COUNSEL FOR BUC-EE'S, LTD.**